NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-0312

SHELLEY COLE ROSHTO

VERSUS

DAMIEN SHANE ROSHTO

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 223,789
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett and James T. Genovese, Judges.

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

Gregory N. Wampler
Attorney at Law
607 Main Street
Pineville, LA 71360
(318) 473-4220
COUNSEL FOR PLAINTIFF/APPELLANT:
    Shelley Cole Roshto

Field V. Gremillion III
Attorney at Law
Post Office Box 731
Alexandria, LA 71309
(318) 445-6021
COUNSEL FOR DEFENDANT/APPELLANT:
    Damien Shane Roshto

PETERS, J.

This litigation involves the issues of custody and support of two minor children born of the marriage of Shelly Cole Roshto and Damien Shane Roshto. Mrs. Roshto appeals that portion of a trial court judgment rejecting her request for modification of a prior consent judgment which established a shared custody arrangement for the children. Mr. Roshto answered the appeal, claiming error in that portion of the judgment awarding his former wife primary custodial status and that portion of the judgment setting his child support obligation. For the following reasons, we affirm the trial court judgment in part and reverse it in part. We render judgment on one of the reversed issues rather than remand the matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

Shelly Cole Roshto and Damien Shane Roshto were married on October 24, 1998, were physically separated in March of 2006, and were divorced by judicial decree on November 6, 2006. Two children were born of the marriage: Cailey Roshto, born April 22, 2002, and Zane Roshto, born December 1, 2003. The litigation now before us has as its origin a May 1, 2006 consent judgment which set forth with specificity a custody sharing arrangement. The judgment ordered that the parents share the custody of their children equally;[1] provided for payment of medical, day-care, and educational expenses of the children;[2] and provided that the matter could be revisited "even in the absence of a significant change at the urgence [sic] of either party just prior to the 2007-2008 school year."

---

[1]The judgment provided that each parent would have physical custody every other week with specific provisions for holiday periods and birthdays.

[2]The judgment required the parents to split equally the medical expenses not covered by insurance, as well as the day-care and educational expenses, but did not require either parent to pay the other child support.

The matters now before us arise from the attempt by Mrs. Roshto to assert her right to have the issues revisited before the 2007-2008 school year. On March 5, 2007, she filed a rule in which she sought modification of the custody sharing arrangement as well as child support from her former husband. Her request for modification of the prior consent judgment arose because Cailey was to begin attending kindergarten in Rapides Parish in the Fall of 2007.[3]

The trial court heard the rule at a September 24, 2007 hearing at which both parents testified. Upon completion of the evidence, the trial court took the issues under advisement and, on December 11, 2007, issued written reasons for judgment and executed a judgment granting Mrs. Roshto relief on the support issue, but denying her relief on the custody issue, other than to name her the principal domiciliary parent. With regard to the support issue, the trial court ordered that Mr. Roshto pay to his former wife the sum of $422.67 per month in two equal installments payable on the first and fifteenth day of each month, and made the payments retroactive to March 5, 2007. In making the payments retroactive, the trial court also ordered that any arrearage arising from the amount accumulated between August 14, 2007, and the date of the judgment be paid by adding $150.00 to the monthly payment until his payments were current.

Mrs. Roshto asserts in her sole assignment of error that the trial court erred in maintaining the shared custody arrangement. In the three assignments of error raised in his answer to the appeal, Mr. Roshto asserts that the trial court erred in (1) naming Mrs. Roshto as the primary domiciliary parent, (2) finding that he was in arrears in

---

[3]The record reflects that at the time of the consent judgment as well as at the time the pleading to modify that judgment was filed, Mrs. Roshto resided in Rapides Parish and Mr. Roshto resided in Grant Parish which is adjacent to Rapides Parish.

his child support obligation, and (3) setting the amount of the health insurance premium when the record contains no evidence of the cost of health insurance.

**OPINION**

*Custody Aspects of Issues on Appeal*

Louisiana Civil Code Article 131 requires that the court "award custody . . . in accordance with the best interest" of the children involved. Additionally, La.Civ.Code art. 132 provides in pertinent part that "[i]f the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award." In this case, the parents originally agreed to a shared custody arrangement, and it is obvious from the trial court's acceptance of that agreement that it concluded that the best interests of the children were served by that arrangement at that particular time. Additionally, because the consent judgment was not a considered decree subject to the "heavy burden" requirement of *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), Mrs. Roshto's burden of proof was to show that a material change of circumstances had occurred since the May 1, 2006 judgment, and that her proposed modification of that judgment was in the best interest of the children. *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 03/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478. Absent a clear abuse of discretion, the trial court's determination with regard to custody of minor children is entitled to great weight by the reviewing court. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756.

The record establishes that both at the time of the consent judgment and the September 24, 2007 hearing, nothing had changed with regards to the parents' domiciles and work activities. At both times, Mrs. Roshto resided in the Deville

3

community of Rapides Parish and Mr. Roshto resided in Grant Parish immediately north of the line dividing the two parishes. At both times, the children were attending a day-care facility in Rapides Parish which is located relatively close to each parent's residence and place of employment.[4] On work days, the parent with physical custody would transport the children to the day-care center before going to work and would pick them up after work.[5] Mrs. Roshto would deliver the children to the day-care center at approximately 7:30 a.m. while Mr. Roshto would deliver them at approximately 6:45 a.m.

Both parents acknowledged in their testimony that initially, they did not communicate well with regard to the children's needs. Part of the communication problems arose because Mrs. Roshto had only a cellular telephone and reception was poor at her residence. Additionally, Mr. Roshto admitted that during the early stages of the litigation he criticized his former wife's parenting skills, and that tension remained heavy between them until approximately two months before the September 24, 2007 hearing.

Mrs. Roshto used as an example of the ineffectiveness of the current custodial arrangement the enrollment of Cailey in the Pre-K program at Buckeye Elementary School in the Fall of 2006. The discipline problems that arose between Cailey and the officials of that school resulted in her involuntary withdrawal from school in February of 2007. This withdrawal occurred after efforts by the school administration to address Cailey's discipline difficulties through a school behavior modification

---

[4]Mrs. Roshto testified that her residence is approximately one-half mile from the day-care center. Mr. Roshto's residence is 16.7 miles from the center. Both parents are employed by Rapides Parish businesses which are located a short distance from the day-care center.

[5]Although the record does not establish the exact distance from the day-care center to Mrs. Roshto's place of employment, the day-care center is obviously in close proximity. Elliott Electric Company is located 5.6 miles from the day-care center.

program failed. While both parents signed on to this program, Mr. Roshto complained that his former wife would not work with him in the program, and that he found himself going to the school two to three times a week without her. Mrs. Roshto, on the other hand, credited Cailey's failure to the instability of the custodial arrangement. Mr. Roshto also suggested that the school officials did not fulfill their obligations under the program.

In the fall of 2007, Cailey returned to Buckeye Elementary School, enrolling in kindergarten. As before, the custodial parent delivered Cailey and her brother to the day-care center each morning and picked them up each afternoon after work. The only difference was that Cailey would catch the school bus at the day-care center. After school, the bus delivered her to the day-care center where she remained with her brother until the appropriate parent picked them up in the afternoon. Both parents acknowledge that none of the Pre-K problems have reappeared since Cailey began kindergarten.

Mrs. Roshto testified that the current custodial situation has been "nothing but trouble," and that she only agreed to it on the advice of her former lawyer. She asserted that the children are "crying and clingy" when she delivers them to her former husband, Cailey's kindergarten enrollment constitutes a substantial change in circumstances, and it is in the children's best interest that the custody plan be modified significantly. Mr. Roshto denied that the children are upset when delivered to him and asserts that the consent judgment remained in the best interest of the children because they are able to spend quality time with both sides of the family and are influenced equally by their parents. Mrs. Roshto acknowledged that, while she desired relief from the current custody plan, any change would constitute a new

unsettling event to the children.

Both parents acknowledge the love and affection the other has for their children, acknowledge that the other parent is a fit parent, and acknowledge that matters have improved since they began communicating with each other. Mr. Roshto testified to helping Cailey with her homework and to participating in four-wheeler riding, swimming, fishing, boat riding, and other activities with his children. He testified that, but for his present negative financial condition, he would move nearer to the children to eliminate some of the travel associated with his custody period.

In its reasons for judgment, the trial court did not address whether Mrs. Roshto satisfied her burden of proof on the material change of circumstance element.[6] Instead, it based its ruling on the best interest element. In doing so, it stated the following:

> Based upon a consideration of all factors in the Civil Code and the tone and demeanor of the parties, the Court finds that it is in the best interest of the minor children that Shelley Roshto be named the principal domiciliary parent, but that there be no change in the current custody arrangement. The previous visitation arrangement agreed to by the parties will continue to govern this case.

We find no error in that portion of the trial court's judgment rejecting Mrs. Roshto's request to modify the stipulated judgment's custody arrangement. Louisiana Civil Code Article 138 sets forth twelve non-exclusive factors to be considered in determining the best interest of the children and, as apparently did the trial court, we find that these factors balance equally between the parents. Thus, Mrs. Roshto failed in carrying her burden of proof on this issue, and we find no abuse of discretion in the

---

[6]We do note, however, that the record establishes no material change of circumstance. While circumstances may change in the future as the children become involved in extracurricular activities at school, Cailey's enrollment in kindergarten changed nothing with regard to the schedules and obligations of either parent. Thus, Mrs. Rostho's reliance on this event as a material change of circumstance is not well founded.

trial court's judgment in this regard.

We do, however, find that the trial court erred in naming Mrs. Roshto the principal domiciliary parent. Louisiana Revised Statutes 9:335(B)(1) provides that "[i]n a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown." Additionally, La.R.S. 9:335(B)(2) defines the domiciliary parent as "the parent with whom the child shall primarily reside." The May 1, 2006 judgment established a custody arrangement in which the parents shared custody equally, and the trial court's December 11, 2007, did not change that arrangement. Furthermore, Mrs. Roshto presented no evidence to establish that, absent a change of the prior custody order which would be favorable to her, good cause exists to name her primary domiciliary custodian of the children. Thus, we find merit in Mr. Roshto's assignment of error on this issue.

### *Support Aspects of Issues on Appeal*

The trial court ordered Mr. Roshto to pay his former wife $422.67 per month as child support, and made the award retroactive to March 5, 2007, the date Mrs. Roshto filed her rule to have child support set. The trial court also ordered that the arrearage created by the retroactive nature of the judgment be satisfied by an additional payment by Mr. Roshto to his former wife of $150.00 per month until he brought his support obligation current. In one of his assignments of error, Mr. Roshto asserts that the trial court should not have made the support award retroactive, and that it should not have ordered the $150.00 per month arrearage payment.[7] We find

---

[7]Mr. Roshto's assignment of error seems to address only the correctness of the $150.00 payment, but his argument also addresses the retroactivity issue. For the sake of completeness we will address both arguments.

7

no merit in his argument that the trial court erred in making the award retroactive to the time of filing of the rule, but do find merit in his argument that the trial court erred in awarding the $150.00 supplemental payment.

Louisiana Revised Statutes 9:315.21(A) provides that, "[e]xcept for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall by retroactive to the date of judicial demand, but in no case prior to the date of judicial demand." In arguing that the award should not have been made retroactive, Mr. Roshto points to a March 26, 2007 hearing at which the parties agreed to delay a hearing on the issues raised by Mrs. Roshto's rule until a psychological evaluation of the parents and children could be completed.[8] He asserts that this agreed-upon delay constituted good cause to not make the support award retroactive. We do not find that this constituted good cause under the statute and find no abuse of discretion in the trial court's retroactive award.

With regard to the supplemental monthly payment, we first note that La.Code Civ.P. art. 3946(A) provides that

> When a payment of support under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due support determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due support.

In the matter now before us, from March 5, 2007, through December 11, 2007, Mr. Roshto was still subject to the requirements of the May 1, 2006 consent judgment, and there is no evidence that he violated any requirement imposed on him therein. That judgment required that he pay one-half of the day-care expenses, educational expenses, and medical expenses not covered by insurance. It listed the monthly day-

_____

[8]The evaluations were apparently completed, but not introduced into evidence at the trial on the rule.

care expenses at that time at $512.00. Thus, assuming that Mr. Roshto fulfilled his obligations under that judgment, he is entitled to a credit of at least $2,304.00.[9] Given the fact that the September 24, 2007 hearing contained no evidence of what had been paid by Mr. Roshto, there exists no arrearage calculation upon which to base the $150.00 payment.

Finally, Mr. Roshto argues that the trial court erred in setting his monthly obligation in that it used totals for health insurance expenses not supported by the record.[10] We acknowledge that the trial court record on the issue of the amount of support is sketchy to say the least. Neither party complied with the requirement of La.R.S. 9:315.2 by providing the trial court with a verified income statement. Thus, the only evidence presented to the trial court that it could use in calculating the monthly support obligation was Mrs. Roshto's payroll stub for the pay period ending September 14, 2007, the 2006 W-2 wage and tax statement for Mr. Roshto, and the unsupported testimony of Mrs. Roshto concerning the cost of health insurance.

Mrs. Roshto testified that, at the time of the hearing on her rule, her former husband was carrying health insurance on the children, but she believed insurance through her employer would be cheaper and the benefits would be better. However, she produced no documentation to support this assertion, and could only testify that she was "not exactly sure" of the cost. She estimated it to be between $330.00 and $350.00 per month with $335.00 being "close." The trial court used $355.00 in

_____

[9]This sum is derived by multiplying the number of months involved (9) by one-half of the stated day-care expenses set in the consent judgment ($256.00). It does not include payment for educational or medical expenses made by Mr. Roshto.

[10]As was the case with the assignment of error discussed immediately before this one, Mr. Roshto has expanded the scope of the assignment in argument. A reading of the assignment of error suggests that it only addresses the issue of medical insurance coverage. However, the argument itself suggests that this error had a detrimental effect on the monthly calculation.

calculating the support obligation. Mr. Roshto presented no evidence on this issue, but failed to object to Mrs. Roshto's insurance cost estimation.

Absent a valid objection, the trial court determined the support issue on the information it had before it. While it could just have easily rejected Mrs. Roshto's request for a child support decree and maintained the particulars of the prior judgment, it chose to set the support obligation. We find no abuse of the trial court's vast discretion on this issue.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment maintaining the custody particulars of the consent judgment of May 1, 2006. We affirm the trial court's judgment ordering Damien Shane Roshto to pay $422.67 per month to Shelly Cole Roshto as child support for their two minor children. We reverse the trial court's judgment ordering Damien Shane Roshto to pay an additional $150.00 per month to Shelly Cole Roshto, said amount representing arrearage payments for past due support. We reverse the trial court's judgment naming Shelly Cole Roshto as the principal domiciliary parent for the children; and we render judgment reinstating the joint custodial status established in the consent judgment of May 1, 2006. We divide the costs of these proceedings equally between Damien Shane Roshto and Shelly Cole Roshto.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.

10